Union City Area School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Thomas Fortin et al., Intervenors.

Argued June 1, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Richard H. Zamboldi,* with him *Richard W. Perhacs, Elderkin, Martin, Kelly, Messina & Zamboldi,* for petitioner.

*George Levin, Shamp, Levin, Arduini, Jenks & Hain,* for intervenors.

*William Fearen,* with him *Michael I. Levin,* and *John DiClemente, Cleckner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE WILLIAMS, JR., September 1, 1981:

Union City School District (District) appeals from an order of the Unemployment Compensation Board of Review (Board) granting unemployment benefits to several token claimants. At issue is the Board's conclusion that the claimants were not ineligible under Section 402(d) of the Unemployment Compensation Law (Law).[1]

The claimants involved in this appeal are professional employees of the District, and by their claims represent a class of other similarly situated claimants.

In September, 1977, a collective bargaining agreement was entered into between the District and the Union City Education Association (Association) collective bargaining representative of the District's professional employees. That agreement remained in effect until June 30, 1979. Prior to the expiration of the agreement, however, negotiations for a new agreement began. On June 25, 1979, the Association submitted a written offer to the District to continue working on a day-to-day basis under the terms of the extant collective bargaining agreement. On August 13, 1979, the District's Superintendent responded to that request, stating that the District would continue the salaries, fringe benefits, and all other conditions

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. 802(d).

and terms of employment, as provided in the last "teacher contract," for an indefinite period of time under the condition "that the Union City Education Association agree to give the [School] Board a written notification five days before any work stoppage" by the teachers.[2] The Association did not send a reply to the District's letter; however, in a negotiating session the Association advised the District of its intent to work under the existing agreement until September 15, 1979.

The claimants returned to work in August, 1979, and continued to work until the close of the work day on September 14, 1979. On that date, the claimants received their first paychecks from the District. The amount of each check was computed on the basis of the annual salary which each claimant had received during the 1978-79 school year. Despite a provision in the expired agreement for a "longevity raise," an increment bestowed upon the employees at the beginning of the school term for their extra year of service, the paychecks did not reflect an increase in salary. All the other terms of the expired agreement, including benefits and related items, were honored by the District.

On September 17, 1979, claimants commenced a work stoppage which continued until October 25, 1979, at which time claimants returned to work by order of the Court of Common Pleas of Erie County.

At the start of the work stoppage, the claimants filed applications for unemployment compensation benefits. The Office of Employment Security denied claimants' applications for the compensable weeks ending September 22, 1979; and after a hearing, that denial was affirmed by a referee. The claim-

---

[2] The term "teacher contract" refers to the collective bargaining agreement, which covers all the claimants here involved.

ants appealed to the Board, which, on April 24, 1980, affirmed the referee's decision. Subsequently, the claimants filed a Petition for Review with this Court and the matter was remanded to the Board for reconsideration of its decision. On October 7, 1980, the Board vacated its earlier ruling and reversed the referee's decision, thereby awarding claimants benefits. The District now appeals from the Board's Order.

The disposition of this appeal turns solely on the question of whether the claimants were locked out, and therefore eligible for benefits, or whether they were engaged in a strike and therefore ineligible. The test for determining whether a work stoppage is a lockout or a strike was established by the Supreme Court of Pennsylvania in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960). The criteria for making such a determination were stated as follows:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'. . . .

*Id.* at 444-45, 163 A.2d at 93-94.

Thus, in essence, we must decide which side first refused to maintain the status quo existing at the expiration of the previous collective bargaining agreement. Our Supreme Court has defined "status quo" as the last actual, peaceable, non-contested

status which preceded the pending controversy. *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 52 A.2d 317 (1947).

In the instant case, petitioner alleges that it allowed claimants to continue working under precisely the same terms and conditions which existed prior to the expiration of the collective bargaining agreement. In that regard, petitioner contends that the collective bargaining agreement does not provide for the payment of longevity raises for increased years of service. Thus, petitioner urges, the work stoppage was not a lockout. We find these arguments to be erroneous and unsubstantiated. Our review of the evidence in this matter reveals that the District was responsible for interrupting the status quo when it failed to adhere to the clause of the expired agreement concerning wages. It is eminently clear that the salary schedule appended to and made part of the prior collective bargaining agreement provided for annual increments to employees for each additional year of employment. In issuing paychecks which did not include a "longevity raise," the District was refusing to honor all of the terms and conditions of the expired contract.[3] Therefore, petitioner, the District, did not preserve the status quo.

Petitioner next asserts that the discrepancy in the salary payment was not the precipitating cause of the work stoppage and that claimants' lockout contention is a spurious allegation bearing no causal relationship to the true circumstances attendant here. We disagree.

It is well established that it is the duty of the compensation authorities to ascertain the final cause and responsibility for the work stoppage. *Vrotney Unem-*

---

[3] *See Elizabeth Forward School District v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 194, 420 A.2d 785 (1980).

*ployment Compensation Case, supra.* Here, the Board found that "the claimants ceased working and established picket lines because of the refusal of the employer to pay the claimants the annual increment which became due upon the commencement of the school term. . . . Accordingly, it was the employer, not the claimant, who did not maintain the status quo. . . ." We hold that the Board's findings are based on substantial evidence and are therefore binding on this Court. Thus, we affirm the Board's decision awarding claimants benefits.

### ORDER

AND Now, the 1st day of September, 1981, the orders of the Unemployment Compensation Board of Review at Decision Nos. B-183512-B, B-183513-B, B-183514-B, B-183515-B, B-183516-B, B-183517-B, B-183518-B, are affirmed.