## Commonwealth v. Gibney

*Dallet Hemphill* and *Victor Wright*, for Commonwealth.

*Thomas A. Riley*, for defendant.

GAWTHROP, J., August 31, 1959. — Plaintiff, the Commonwealth of Pennsylvania, acting through the Attorney General, filed a complaint in equity seeking a preliminary injunction and ultimately a final decree enjoining defendant Gibney from directly or indirectly refusing, withholding from or denying to any person or persons the accommodations, advantages, facilities or privileges of the swimming pool at Lenape Park in this county on account of race, creed or color of such person or persons. The court granted a rule to show cause why a preliminary injunction should not issue and fixed a hearing date with notice to defendant.

Defendant thereupon filed a preliminary objection to the complaint on two grounds: First, that the Commonwealth is not the real party in interest in the action; and second, that the Commonwealth has no right or authority to proceed in equity to enforce a penal statute, to wit, the provisions of The Penal Code of June 24, 1939, P. L. 872, sec. 654, 18 PS §4654. Immediately thereafter he filed a pleading in the nature of an answer to the rule for preliminary injunction. Argument was had on the preliminary objection, after which testimony was taken in support of the allegations of the complaint. Defendant offered no testimony. The matter is now before us for consideration

on the questions raised by the preliminary objection as well as on the record made in support of the application for a preliminary injunction.

There is no merit in the first ground urged in support of the preliminary objection. The Administrative Code of April 9, 1929, P. L. 177, 71 PS §244, provides, inter alia, as follows:

"The Attorney General shall be the legal advisor of the Governor, in the performance of his official duties, and the chief law officer of the Commonwealth.

"He shall exercise such powers and perform such duties as may now or hereafter be vested in or imposed upon him by the Constitution and laws of this Commonwealth": Section 704.

"The Department of Justice shall have the power, and its duty shall be, with the approval of the Governor:

"(a) To investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its notice;

"(b) To take such steps, and adopt such means, as may be reasonably necessary to enforce the laws of the Commonwealth": Section 904, 71 PS §294.

Pa. R. C. P. 2102(a), governing the style in which actions shall be brought, provides:

"(a) An action by the Commonwealth shall be brought in the name of the Commonwealth of Pennsylvania."

The Penal Code of June 24, 1939, P. L. 872, sec. 654, 18 PS §4654, declares the public policy of the Commonwealth against racial discrimination in the admission of persons to full and equal accommodations of any places of public accommodation, resort or amusement, and gives rise to both civil remedies on the part of persons aggrieved as well as penal sanctions against offenders: Everett v. Harron, 380 Pa. 123. As chief law enforcement officer of the Commonwealth, the

Attorney General beyond doubt has the power under section 904(b) of the Administrative Code of 1929, supra, and Pa. R. C. P. 2102, supra, to maintain proceedings in the name of the Commonwealth, including suits in equity for injunctive relief, where they appear to be reasonably necessary as a means to enforce its laws: Commonwealth v. Williams, 8 Bucks 206.

As we understand it defendant acknowledges, as indeed he must under the rule of Everett v. Harron, supra, that the parties allegedly aggrieved, either for themselves alone or by a class action on behalf of themselves and others similarly situated, could properly have brought such an action in their own names as plaintiffs. But he denies the existence of any right in the Commonwealth to do so. While we have been cited to no controlling appellate authority in Pennsylvania, and our own research has disclosed none, we are satisfied that the reasoning of the Bucks County court in the Williams case is both sound and supported by text writers and the trend of decisions in other jurisdictions.

49 Am. Jur. §80, p. 292, says:

"A state, as a political corporation, has the right, *independent of any statutory provision*, to institute a suit in any of its courts, the courts of sister states, and the United States courts, whether it is required by its pecuniary interests or *the general public welfare*. It possesses this right both in its sovereign capacity and by virtue of its corporate rights." (Italics supplied.)

To similar effect is 81 C. J. S. §213, p. 1299, which says:

"Although the right to sue is sometimes expressly conferred by statute, it is well settled that, independently of any statutory provision therefor, a state may sue in its own courts, either in its sovereign capacity,

or by virtue of its rights as a political corporation, or a political entity."

Obviously, in light of the declaration of policy contained in section 654 of The Penal Code, the general welfare is here involved. And the provisions of The Administrative Code, sec. 904(b), and of Pa. R. C. P. 2102(a) supply the statutory and procedural authority for this action in the name of the Commonwealth independently of and without the necessity of reliance upon the general power of a State to bring suit in its sovereign capacity.

As long ago as In Re Debs, 158 U. S. 544, 39 L. Ed. 1092, 15 S. Ct. 900, the United States Supreme Court faced the question whether the United States could properly sue in equity to enjoin a railroad strike. The Government proceeded on the basis that its proprietorship of the mails constituted a financial interest which gave it the right to seek to enjoin the strike. The court there said:

"We do not care to place our decision upon this ground alone. Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court."

That being so of the United States, a government of derivative powers, the more so is it true of a sovereign State in the absence of an express limitation of its powers. In recognition of such a right it has been held that a State may proceed in equity to enjoin a

sister State's actions which would seriously jeopardize the health and welfare of a substantial portion of the population of the former; that in so doing plaintiff, as representative of the public, has an interest apart from the individuals affected, and such interest is both immediate and recognized by law: Commonwealth of Pennsylvania v. State of West Virginia, 262 U. S. 553, 67 L. Ed. 117, 43 S. Ct. 658.

The courts of other States have followed the rule of In Re Debs and the rule that the sovereignty of a State embraces the power to execute its laws, including the right to exercise supreme dominion and authority, except as limited by the fundamental law: People ex rel. Attorney General v. Tool, 35 Colo. 225, 86 Pac. 224; People ex rel. Bennett v. Laman, 277 N. Y. 368, 14 N. E. 2d 439; State v. Hooker, 87 N. W. 2d 337 (N. D., 1957).

The other ground for preliminary objection is also without merit. The true rule is that the mere fact that an act complained of is a crime neither confers equitable jurisdiction nor ousts it. While equity will not enjoin the commission of a crime in order to enforce the criminal law, the criminal nature of an act will not deprive equity of jurisdiction otherwise attaching. Section 654 of The Penal Code vests in the individuals aggrieved a basic civil right for violation of which they have a right of action for redress. Where a multiplicity of suits may be prevented or a fundamental question of legal right is involved, as here, equity will exercise jurisdiction: Everett v. Harron, supra.

The preliminary objection must be overruled on both grounds.

In support of the application for a preliminary injunction the Commonwealth produced testimony in support of its allegations of exclusion of certain Negroes from the pool on two occasions. Defendant offered no evidence to controvert that proof.

The complaint avers that defendant is proprietor of Lenape Park, a place of public accommodation, resort and amusement, being an amusement or recreation park located in this county, in which among other devices or structures erected, maintained and offered by defendant for hire to the public for amusement and recreation is a swimming pool. It further avers that on dates specified defendant unlawfully refused, withheld from and denied to certain persons the accommodation, advantage, facility and privilege of such swimming pool on account of their race, contrary to the provisions of section 654 of The Penal Code of Pennsylvania, that about such time or times defendant stated to representatives of the Department of Justice of the Commonwealth that he had theretofore avoided the mixing of the races in the swimming pool and that he proposed to operate the pool as a private club in order to enable defendant to prohibit its use by Negroes and "other undesirables," that "no adequate remedy at law is available to prevent irreparable damage" and that a "multiplicity of actions would be required to prevent the continuing acts of unlawful racial discrimination to the detriment of the public and the rights of private individuals."

The credible evidence establishes that about May 1959, defendant denied the equal accommodation, advantage, facility and privilege of the swimming pool within and a part of Lenape Park by reason of their race to certain Negro members of the ninth grade class of Beverly Hills Junior High School of Upper Darby by requiring the school authorities to explain to the Negro students in the class that they would not be permitted to use the pool, and made that a condition of reserving the pool for use of the class. On May 27, 1959, he stated to investigators for the Pennsylvania Department of Justice that that had been his practice and policy in times past, and that he had so far man-

aged to avoid the mixing of races in the pool by such means. On May 28, 1959, he stated to the same investigators that as of the following day, May 29, a private club would thereafter operate the pool and admitted that one of the reasons for forming the club was to keep out of the pool Negroes and other "undesirables."

On June 7, 1959, defendant denied the equal accommodation, advantage, facility and privilege of the swimming pool by reason of her race to one Lee Harvey, a Negress, by refusing to admit her to the use of the pool while on the same day, both before and afterward, persons of the Caucasian race were admitted thereto.

Lenape Park, including its swimming pool, is a "place of public accommodation, resort or amusement" within the terms of section 654 of The Penal Code: Commonwealth v. Figari, 166 Pa. Superior Ct. 169. There can be no doubt on the evidence shown that defendant by his conduct violated the mandate of the code. He argues, however, that the Commonwealth must show in addition an irreparable injury resulting to someone, and that the record is barren of evidence to that effect. That argument overlooks the rule announced in Pennsylvania Public Utility Commission v. Israel, 356 Pa. 400, at 406 that:

"When the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. *For one to continue such unlawful conduct constitutes irreparable injury.*" (Italics supplied.)

Under such circumstances a separate and independent showing of irreparable injury or damage is unnecessary, and the prayer for a preliminary injunction must therefore be granted.

The preliminary objection is overruled and defendant is allowed 20 days to file an answer.

The prayer of the complaint is granted and the following is hereby entered as a

## Decree

And now, August 31, 1959, after hearing held upon notice to defendant,

It is ordered, adjudged and decreed that defendant within named, John V. Gibney, doing business as Lenape Park, his agents, servants, workmen and employes, and every of them, be and they hereby are temporarily until final hearing in the matter enjoined and restrained from directly or indirectly refusing, withholding from or denying to any person or persons the accommodations, advantages, facilities or privileges of the swimming pool at Lenape Park, Chester County, on account of the race, creed or color of such person or persons.